IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                     Criminal Action No. 5:09CR24
                                                           (STAMP)
GARY RAY DEBOLT,

       Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING HARMONY HOUSE'S MOTION TO QUASH,
DENYING DEFENDANT'S MOTION TO ENFORCE AND
ALTER THE TERMS OF SUBPOENA DUCES TECUM AND
ISSUING A QUALIFIED PROTECTIVE ORDER AS TO HARMONY HOUSE**

I.  Background

On July 27, 2010, the defendant in the above-styled criminal action filed a motion for subpoena duces tecum requesting documents from Harmony House, Inc. ("Harmony House") relating to the operations and funding of Harmony House, as well as information regarding Harmony House personnel who conduct forensic interviews of children suspected of having been abused. (Docket No. 135.) The United States filed a response contra motion for subpoena duces tecum on July 28, 2010. In support of its response, the United States argues: (1) the defendant is not entitled to interview the Harmony House forensic interviewer and Executive Director, Leslie Vassilaros; and (2) the list of materials requested by the defendant is onerous and over-broad. This Court granted the defendant's motion for subpoena duces tecum on July 29, 2010, and the subpoena was issued to "Leslie Vassilaros c/o Harmony House" on that same date.

On July 30, 2010, the United States filed a motion to quash the subpoena duces tecum for Harmony House. In support of this motion, the government argues that the list of items requested by the defendant is a generic list that is both onerous and over-broad. On August 3, 2010, the parties convened for a hearing in connection with the defendant's sentencing, at which time this Court ruled that the government's motion to quash should be granted in part and denied in part--only three of the ten areas of documents sought could/should be produced. The Court's order of August 5, 2010 confirmed that pronounced order.[1]

On August 26, 2010, the defendant filed a motion to enforce and alter the terms of the subpoena duces tecum, requesting that the Court order Harmony House to copy the requested documents and turn them over to the defendant. The United States filed a response in opposition to this motion on August 27, 2010. The parties and attorney Robyn Ruttenberg, counsel for Harmony House, appeared at the Wheeling point of holding court on September 13, 2010 for a hearing on the motion to enforce and alter the terms of the subpoena duces tecum. At this hearing, approximately fifteen (15) boxes of records from Harmony House were filed under seal and placed in the Wheeling Clerk's Office.

On September 14, 2010, Harmony House, through counsel, filed a motion to quash and motion for a protective order. In support of

---

[1]The defendant's sentencing hearing was not concluded on August 3, 2010.

this motion, Harmony House argues: (1) because Harmony House was not served with the subpoena duces tecum, the Court lacks jurisdiction over Harmony House with regard to Harmony House's records; (2) the subpoena duces tecum is oppressive and unreasonable; (3) Rule 17 of the Federal Rules of Criminal Procedure imposes no obligation on the witness to produce copies of the documents requested; (4) having a Harmony House staff member present while the defendant's counsel reviews Harmony House's documents is reasonable under the circumstances; (5) any disruption or discrepancy in Harmony House's documentation would compromise its funding and its funding sources; and (6) the subpoena duces tecum constitutes a fishing expedition on the part of the defendant and is not intended to produce substantive evidence.

On September 15, 2010, the defendant, through counsel, filed a response to Harmony House's motion to quash and motion for protective order. In his response, the defendant argues that Harmony House's motion should be denied for the following reasons: (1) the motion is untimely because it was not filed promptly according to Rule 17(c)(2) of the Federal Rules of Criminal Procedure; (2) the subpoena was properly served on Harmony House because it is clear from the plain terms of the subpoena that Harmony House was the intended recipient of the subpoena; and (3) the subpoena is neither oppressive nor unreasonable.

The United States then filed a supplemental memorandum in support of its motion to quash on September 17, 2010.[2] In this memorandum, the government argues: (1) the United States has standing to challenge the subpoena duces tecum issued to Harmony House; and (2) it is improper for the defendant to use the subpoena duces tecum to conduct a fishing expedition for impeachment material.

## II. Applicable Law

### A. Federal Rule of Criminal Procedure 17(c)

Rule 17(c) of the Federal Rules of Criminal Procedure governs the issuance of subpoenas that seek the production of documents and other items in criminal cases.[3] Rule 17(c) states:

> (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Rule 17(c) may only be used to obtain materials that would be admissible as evidence at trial. See Bowman Dairy Co. v. United States, 341 U.S. 214, 221 (1951). Rule 17(c) is not to be used as

---

[2] The United States' original motion to quash the subpoena for Harmony House was filed on July 30, 2010.

[3] A subpoena duces tecum is the vehicle for securing production of documents and things at a specified time and place either before or after the time of trial. See 2 Wright, Federal Practice and Procedure: Criminal 2d § 271 at 134 ("[Rule 17] is not limited to subpoena for the trial. A subpoena may be issued for . . . posttrial motions.") (citations omitted).

4

a discovery device. See id. 220-21 ("Rule 17(c) was not intended to provide an additional means of discovery."); United States v. Fowler, 932 F.2d 306, 311 (4th Cir. 1991) (stating that a Rule 17(c) subpoena duces tecum is not a discovery device). Rule 17(c)(2) provides: "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." In order to clear the "unreasonable or oppressive" hurdle, the Supreme Court requires the subpoenaing party to show:

> "(1) that the documents are evidentiary and relevant; (2) that [the documents] are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that [it] cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"

United States v. Nixon, 418 U.S. 683, 699-700 (1974) (footnote and internal quotations omitted). Therefore, a party seeking production of documents under Rule 17(c) must demonstrate that the materials sought are relevant, admissible, and specifically identified.

Whether a subpoena duces tecum should be quashed or modified is a matter within the sound discretion of the trial court, and the court may, on a motion by a party seeking relief, quash or modify a subpoena for production of evidence, on the ground that the request is unreasonable or oppressive. Nixon, 418 U.S. at 698. When a party requests that a trial court quash a subpoena duces tecum already issued, the court must determine whether the subpoena

is relevant, admissible, and specific so that compliance will not be overly burdensome. See United States v. Richardson, 607 F.3d 357, 363 (4th Cir. 2010) (citing Nixon, 418 U.S. at 698-700). The party moving to quash has the burden of showing that the subpoena is unreasonable and oppressive. See Bazemore v. State, 535 S.E.2d 830, 834 (Ga. App. 2000).

B. Protective Order

Under West Virginia Code Section 27-3-1(b)(3), disclosure of confidential mental health treatment information is permitted "[p]ursuant to an order of any court based upon a finding that said information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section." See also Allen v. Smith, 368 S.E.2d 924 (W. Va. 1998).

Under HIPAA standards for disclosures for which an authorization is not required, disclosures of individually identifiable protected health information may be made pursuant to a qualified protective order that:

> (a) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceedings for which such information was requested; and
> (b) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512(e)(1)(v); see also A Helping Hand, LLC v. Baltimore Cnty., Maryland, 295 F. Supp. 2d 585, 592 (D. Md. 2003).

6

III.  Discussion

A.  Harmony House's Motion to Quash

1.  Timeliness of Motion

On July 29, 2010, this Court granted the defendant's motion for a Rule 17(c) subpoena and directed the United States Marshals Service to serve the subpoena on Harmony House.  Harmony House, however, did not file its motion to quash and motion for protective order until September 14, 2010, almost seven weeks later.  Had Harmony House been aggrieved or injured by this Court's previous orders, it should have promptly entered an appearance and contested the issuance of the subpoena in accordance with Rule 17(c).  Instead, Harmony House seemed to rely on the United States Attorney's motion to quash and allowed the United States Attorney's Office to argue its position regarding the defendant's motion to enforce and alter the terms of the subpoena duces tecum.

Not only did Harmony House delay in filing its motion to quash and motion for protective order, but it also filed its motion after the documents had been already been viewed by the defendant's counsel and delivered to the Court.  In the defendant's motion to enforce and alter the terms of the subpoena duces tecum, counsel for the defendant indicates that on August 18, 2010, he spent the entire day reviewing documents from Harmony House that were delivered to the United States Attorney's Office by a Harmony House staff member pursuant to this Court's subpoena.  The defendant's counsel attempted to review the documents again on August 24, 2010,

7

but was interrupted and told that he could not review the documents without a Harmony House staff member present.

According to the United States in its response to the motion to enforce and alter subpoena, Harmony House delivered fourteen (14) boxes of documents to the United States Attorney's Office on August 4, 2010 and informed counsel for the defendant that additional documents would be delivered as soon as possible. According to the government, Harmony House complied with counsel's requests and attempted to coordinate with counsel in order to ensure that review of the materials could be completed.

This Court directed a representative of Harmony House to appear for a hearing on September 13, 2010 and to bring to the hearing all documents that the Court had previously subpoenaed. Harmony House did make an appearance and turned over the documents to the Court to be placed under seal. (Hr'g Tr. 17, Sept. 13, 2010.) Both the defendant and the United States recognize that defense counsel and Harmony House experienced difficulties in coordinating the review of the documents, but it is clear that at least on one occasion (August 18, 2010), counsel for the defendant reviewed Harmony House documents with the permission of, and in the presence of, a Harmony House representative. Because Harmony House failed to voice its opposition to the subpoena duces tecum until after it had already complied, at least in part, with the subpoena, the motion to quash and motion for protective order must be denied as untimely.

2. <u>Unreasonableness of Motion</u>

In its motion to quash and motion for protective order, Harmony House argues that the subpoena duces tecum is oppressive in its scope and unreasonable given its breadth and the short time given to respond and comply. Further, Harmony House argues that compliance with the subpoena duces tecum is unreasonable and oppressive because it constitutes a fishing expedition on the part of the defendant. In response, the defendant argues that the subpoena is not oppressive and unreasonable because Harmony House has already produced the documents for review. This Court agrees. The fact that Harmony House has already delivered documents to the defendant's counsel and to this Court significantly undermines its argument that production is unreasonable. Moreover, this Court has already reviewed each of the defendant's requests in the July 29, 2010 subpoena duces tecum and determined that the production of certain Harmony House documents is not overly broad or burdensome.[4]

3. <u>Standing</u>

In his response to Harmony House's motion to quash, the defendant argues that Harmony House improperly relied on the United States Attorney's Office to assert its position on the motion to quash. The defendant cites <u>United States v. Idema</u>, No. 04-6130, 2005 WL 17436, at *3 (4th Cir. Jan. 4, 2005), in which the United

---

[4] On August 3, 2010, the parties convened for the defendant's sentencing hearing, at which time this Court ruled that the government's motion to quash should be granted in part and denied in part. This Court's order of August 5, 2010 confirms the pronounced ruling of the Court at that hearing.

9

States Court of Appeals for the Fourth Circuit states, "[o]rdinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." While this Court was initially inclined to agree with the defendant's position regarding standing, the United States subsequently filed a motion setting forth the reasons why the government does, indeed, have standing to challenge a subpoena duces tecum obtained by the defendant and directed toward a third party prosecution witness.[5]

In support of its position, the government notes that Rule 17 does not expressly prohibit the United States from challenging a subpoena issued by a defendant. Notably, Rule 17 is silent as to who, exactly, may file a motion to quash. Given the considerable precedent in support of its position, this Court agrees that the United States does have standing in this instance to challenge the subpoena duces tecum directed at Harmony House. See <u>United States v. Raineri</u>, 670 F.2d 702, 712 (7th Cir. 1982) ("The prosecution's standing [to move to quash the subpoena] rested upon its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness'] credibility."); <u>United States v. Clark</u>, No. 100CR00094, 2001 WL 759895, at *1 (W.D. Va. June 27, 2001) ("[C]ourts have routinely

---

[5]The United States has indicated at times that it intends to call Ms. Vassilaros as a witness.

granted the government's motion to quash a subpoena duces tecum where a defendant requests records from a third party."); United States v. Vasquez, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009) (finding that the government had standing to challenge the defendant's subpoena to county police department based in part on the fact that the government had a legitimate interest in preventing the defendant from using a subpoena to obtain discovery materials that would otherwise be protected from disclosure); United States v. Smith, 245 F.R.D. 605, 611 (N.D. Oh. 2007) (finding that the government had standing to challenge the defendant's subpoena to a Catholic Bishop, where the Bishop was a government witness and the records sought belonged to the Diocese); United States v. McClure, Criminal Action No. 10-028, 2010 WL 3523030, at *3 (E.D. La. Sept. 1, 2010) ("'Party has standing to move to quash subpoena addressed to another if subpoena infringes on movant's legitimate interest.'") (quoting Raineri, 670 F.2d at 702). But see United States v. Beckford, 964 F. Supp. 1010, 1023-24 (E.D. Va. 1997) ("In many instances, the opposing party in a criminal case will lack standing to challenge a subpoena issued to a third party because of the absence of a claim of privilege, or the absence of a proprietary interest in the subpoenaed material or of some other interest in the subpoenaed documents.") (citing United States v. Reyes, 162 F.R.D. 468, 470-71 (S.D.N.Y. 1995)).

This Court recognizes that the United States has an interest in protecting its potential witness, Ms. Vassilaros, from possible

11

harassment and unnecessary burden. However, because Harmony House has already delivered some documents to counsel for the defendant and all of the documents to the Court, these arguments are moot. Harmony House has already complied with the terms of the subpoena duces tecum and the orders of this Court; therefore, any argument, by either Harmony House or the United States, that compliance is overburdensome or onerous fails.

B.  Defendant's Motion To Enforce and Alter the Terms of Subpoena Duces Tecum

In his August 26, 2010 motion to enforce and alter the terms of the subpoena duces tecum, the defendant describes the difficulties faced by his counsel when attempting to review the Harmony House documents. According to the defendant, Harmony House failed to provide defense counsel with a meaningful opportunity to review all of the requested documents and make any necessary copies. In this motion, the defendant requested that the Court order Harmony House to copy the documents and turn them over to the defendant.

In its motion to quash and motion for a protective order, Harmony House requests that the Court grant its motion and return its records, or in the alternative, that the defendant view its records in the presence of a Harmony House staff member. However, Harmony House provides no law in support of its position that the defendant's counsel should be required to review the documents

under the supervision of a Harmony House representative. (Hr'g Tr. 18, Sept. 13, 2010.)

The subpoenaed Harmony House documents have since been filed under seal and placed in the Wheeling Clerk's Office. (Hr'g Tr. 27, Sept. 13, 2010.) On September 28, 2010, the defendant filed a motion for in camera inspection regarding the mental health treatment records of Savanna Debolt from Northwood Health Systems, Inc., Fox Run Center for Children and Adolescents, and Matthew G. Sokos, M.D. No request for an in camera review was ever made regarding the Harmony House documents; however, none is needed with a qualified protective order in place. Additionally, a qualified protective order will render the defendant's motion to enforce and alter the terms of the subpoena duces tecum moot. Thus, in the interest of justice, to the extent that they contain any information deemed to be confidential under state or federal law, this Court issues a qualified protective order regarding the documents produced by Harmony House. Further, the Court denies the defendant's motion to enforce and alter the terms of subpoena duces tecum.[6]

## IV. Conclusion

For these reasons, Harmony House's motion to quash is DENIED. Further, the defendant's motion to enforce and alter the terms of the subpoena duces tecum is DENIED. To the extent that the Harmony

---

[6]A similar qualified protective order was also entered with regard to the documents produced by Northwood, Fox Run, and Dr. Sokos.

13

House documents contain any information deemed to be confidential under state or federal law, the Court enters the following qualified protective order:

1. The records delivered to the Court by Harmony House may be released to defense counsel pursuant to the requirements of this qualified protective order.

2. The parties and their counsel shall be and are hereby prohibited from using or disclosing the records for any purpose other than in this proceeding.

3. Should the defendant propose to use or offer any of the records into evidence at sentencing, the defendant shall tender to the Court a proposed order to place the records under seal in advance of the hearing.

4. At the end of this proceeding, the parties and their counsel shall return or destroy, at the election of Harmony House, the records produced by Harmony House and all copies made. For the purposes of this order, this proceeding shall end upon entry of final judgment and the running of the full time for any appeals or upon final disposition of this case after appeal.

The Clerk is directed to transmit copies of this memorandum opinion and order to the defendant and to counsel of record herein.

DATED: October 19, 2010

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE